UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIE CUEVAS, ADOLFO GOMEZ-MORENO, REYNALDO TOLANO, and AGUSTIN AMBRIZ, on behalf of themselves and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DIAS & FRAGOSO, INC., a California Corporation; D&F AGRICULTURAL ENTERPRISES, INC., a California Corporation; GABRIEL M. DIAS; and JOHN L. FRAGOSO,<br><br>Defendants. | Case No. 1:17-cv-00357-LJO-BAM<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFFS' MOTION FOR COLLECTIVE CERTIFICATION AND ISSUE NOTICE<br><br>(Doc. 21) |

**I.     INTRODUCTION**

Before the Court is Plaintiffs Rosalie Cuevas, Adolfo Gomez-Moreno, Reynaldo Tolano, and Agustin Ambriz ("Plaintiffs") motion for conditional certification of a collective action filed on February 21, 2018. (Doc. 21). Defendants filed their opposition on March 12, 2018 (Doc. 22), and Plaintiffs filed their reply on March 20, 2018 (Doc. 23). This Court heard oral arguments on April 6, 2018. (Doc. 24.) Attorney Enrique Martinez telephonically appeared on behalf of the Plaintiffs and attorney William Woolman telephonically appeared on behalf of the Defendants. (Doc. 24). Having considered the moving, opposition and reply papers and the

parties' arguments on the record, the Court RECOMMENDS GRANTING Plaintiffs' motion for conditional certification, and AUTHORIZING the mailing of Plaintiffs' proposed notice.

## II. BACKGROUND

The Plaintiffs are current and former employees of Dias & Fragoso, Inc. and D&F Agricultural Enterprises, Inc. (collectively "D&F"). D&F, headquartered in Hanford, California, provides machinery and personnel to client dairy farms to harvest, transport, and weigh crops. Plaintiffs' Class and Collective Action Compl. ¶ 12, 17 ("Compl."), (Doc. 1 at 4-5). On March 10, 2017, Plaintiffs filed this collective action against D&F alleging violations of the Fair Labor Standards Act ("FLSA"). In addition to bringing claims against D&F, Plaintiffs also allege, that as owners and managers, Defendants Gabriel Dias and John Fragoso are individually liable under the FLSA because they exercised operational control of the day-to-day operations of D&F, including making hiring and firing decisions and other administrative decisions. Compl. ¶ 18.

The crux of the Plaintiffs' federal law claim against all Defendants is that D&F and its owners and managers failed to compensate them as covered, non-exempt employees under the FLSA. Named Plaintiffs allege generally that although most of D&F's operations are nonagricultural, Defendants have a blanket policy of classifying all of their employees as agricultural workers. Compl. ¶ 2. Because of this alleged misclassification, the Plaintiffs seek unpaid overtime for hours worked in excess of forty hours per week, as required by 29 U.S.C. § 207 for four subclasses of employees including: (1) mechanics, (2) maintenance workers, (3) weighers from March 10, 2014 (three years before the complaint was filed) through the present, and (4) truck drivers from March 10, 2014 through April 4, 2016, when Defendants began paying overtime compensation as to truck drivers only.

Defendants oppose conditional certification in large part by arguing that Plaintiffs' own declarations demonstrate that Plaintiffs are agricultural workers exempt under the FLSA agricultural worker exemption.[1]

---

[1] Plaintiffs seek to conditionally certify the collective action as against all four defendants, two entities and two individuals. At oral argument, defendant did not dispute, for purposes of the motion only, that the individual Defendants can be liable for FLSA violations because as "owners and managers" they are considered employers under the FLSA. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).

## III. LEGAL STANDARD

Congress enacted the FLSA in 1938 to establish nationwide minimum wage and maximum hours standards. *Moreau v. Klevenhagen*, 508 U.S. 22, 25 (1993). The FLSA requires employers to pay covered employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week, unless an exemption applies. 29 U.S.C. § 207(a)(1). To ensure compliance with this requirement, the FLSA authorizes actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's overtime provisions. 29 U.S.C. § 216(b).

In addition to bringing individual suits, the FLSA allows employees to bring a collective action on behalf of other "similarly situated" employees based on alleged violations of the FLSA. 29 U.S.C. § 216(b). A "collective action" differs from a class action. *McElmurry v. U.S. Bank Nat'l Ass'n,* 495 F.3d 1136, 1139 (9th Cir. 2007). "In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by 'giv[ing] his consent in writing.'" *Id.* (citing 29 U.S.C. § 216(b)). As a result, "unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results." *Id.* (citing 29 U.S.C. § 256). Section 216(b) does not require district courts to approve or authorize notice to potential plaintiffs, but it is "within the discretion of a district court" to authorize such notice. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). The plaintiff bears the burden to show that he and the proposed class members are "similarly situated." *See Adams v. Inter–Con Security Sys., Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. Apr. 11, 2007) (citing 29 U.S.C. § 216(b)).

The FLSA does not define the term "similarly situated." *Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 426-27 (N.D. Cal. 2010). Although the Ninth Circuit has not yet articulated the appropriate test for certifying an FLSA collective action, district courts in this Circuit generally apply a two-step approach. *See, e.g. Syed v. M-I, L.L.C.*, No. 1:12-CV-1718, 2014 WL 3778246, at *3 (E.D. Cal. July 30, 2014), *report and recommendation adopted as modified*, 1:12-CV-1718 AWI MJS, 2014 WL 6685966 (E.D. Cal. Nov. 26, 2014); *Reed v. County of Orange*, 266 F.R.D. 446, 449 (C.D. Cal. 2010); *Edwards v. City of Long Beach*, 467

F.Supp.2d 986, 990 (C.D. Cal. 2006); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Under the first step, the court makes an initial "notice-stage" determination as to whether potential opt-in plaintiffs are similarly situated to the representative plaintiffs, deciding if a collective action should be certified for the sole purpose of sending notice of the action to potential class members. *Leuthold*, 224 F.R.D. at 467. This determination is "based primarily on the pleadings and any affidavits submitted by the parties." *Id.* The standard applied at this stage has been described as "fairly lenient," *id.*, requiring little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan." *Villa v. United Site Services of Ca.*, No. 5:12–CV–00318–LHK, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *see also Morton v. Valley Farm Transport, Inc.*, No. C–06–2933–SI, 2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007) (describing burden as "not heavy" and requiring plaintiffs to merely show a "reasonable basis for their claim of class-wide" conduct) (internal quotation marks and citation omitted). The standard "typically results in conditional class certification." *Leuthold*, 224 F.R.D. at 467. Moreover, "[p]laintiffs need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 640 (E.D. Cal. 2009)).

In the second stage, which is reached once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. *Reed*, 266 F.R.D. at 449. The court then must make a factual determination regarding the propriety and scope of the class and must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Pfohl v. Farmers Ins. Grp.*, 2004 WL 554834, *2–3 (C.D. Cal. Mar. 1, 2004) (*citing Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). Should the court determine on the basis of the complete factual record that the plaintiffs are not similarly situated, then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Leuthold*, 224 F.R.D. at 467.

///

## IV. ANALYSIS

Plaintiffs maintain that they have satisfied the requirement for conditional certification of making a modest factual showing that: (1) they are similarly situated to the potential opt-in plaintiffs and (2) they were all the victims of a single companywide policy that resulted in their not being paid federally required minimum and overtime wages. In support of conditional certification, Plaintiffs offer twenty-seven (27) substantially similar declarations from various employees all claiming that each subclass of employee provides the same essential function and has similar job duties. For instance, weigher, Plaintiff Rosalie Cuevas, outlines that the weigher subclass of employees weighs the corn and wheat transported to the dairy farms to feed client livestock. *See* Declaration of Rosalie Cuevas ("Cuevas Decl."), at ¶ 2, (Doc. 21-4 at 157). Ms. Cuevas declares that as a scale operator she was responsible for "weighing the wheat that Dias & Fragoso's truck drivers brought to dairies" using a "scale head." Cuevas Decl. ¶ 3. She "weighed each truck and its contents, and recorded the gross and net weight." Cuevas Decl. ¶ 3. She alleges that she usually worked more than 12 hours per day and work 6 days per week, however, she was not paid overtime until after 10 hours per day or 60 hours per week. Cuevas Decl. ¶ 4. The declarations of other weighers Susie Gomez and Melissa Nava describe essentially identical job duties, hours worked, and compensation paid. *See* Declaration of Susie C. Gomez ("Gomez Decl."), (Doc. 21-4 at 172); Declaration of Melissa Nava ("Nava Decl."), (Doc. 21-4 at 120).

Mechanics Manuel Hernandez and Julio Cesar Mendoza declare that their job duties include working on tires, brakes, transmissions, and other parts to maintain the trucks servicing the clients fields. *See* Declaration of Manuel Hernandez ("Hernandez Decl."), at ¶ 2 (Doc. 21-4 at 172). During the peak corn and wheat seasons, the mechanics usually work more than 12 hours per day and work 6 days per week. Hernandez Decl. ¶ 3. During the off-season, the mechanics usually work 9 to 10 hours per day. *Id*. Despite working more than 40 hours per week, Mr. Hernandez declares that he and the other mechanics are not paid overtime until after 10 hours per day or 60 hours per week. Hernandez Decl. ¶ 4.

Maintenance worker and named Plaintiff Agustin Ambriz describes that he worked in the "chopper shop washing the choppers and fixing the machines." *See* Declaration of Agustin

Ambriz ("Ambriz Decl."), at ¶ 2 (Doc. 21-4 at 172). Despite working more than 40 hours per week, he declares that he and the other maintenance workers are not paid overtime until after 10 hours per day or 60 hours per week. Ambriz Decl. ¶ 4.

Truck driver, Adolfo Gomez-Moreno along with several other truck drivers describe that during their workday they drive to the fields owned by Defendants' clients. *See* Declaration of Adolfo Gomez-Moreno ("Gomez-Moreno Decl."), at ¶ 2 (Doc. 21-4 at 3-5). Workers located at those fields load corn and wheat in the truck. Gomez-Moreno Decl. ¶ 2. The truck drivers then transport the corn and wheat to the clients' dairy farms, which is used to feed the client's cows. Truck drivers usually work at least 10 hours per day, 6 days per week; however they are not paid overtime until after working 60 hours per week. Gomez-Moreno Decl. ¶ 4.

Plaintiffs maintain that this evidence more than satisfies the "modest" burden required at this stage in the proceedings to demonstrate that Plaintiffs and the potential collective are similarly situated because putative class members within each subclass perform virtually uniform job duties and Defendants maintained a company-wide plan that resulted in the failure to pay them overtime as required under 29 U.S.C. § 207(a)(1).

**1.     Plaintiffs Have Demonstrated that they are Similarly Situated**

Altogether, Plaintiffs have submitted twenty-seven declarations of current and former employees who were based in and out of Defendants Hanford, California location. These employee declarations provide sufficient evidence to establish that the named Plaintiffs and the putative class members are "similarly situated" for two reasons. First, Plaintiffs' sworn declarations demonstrate that the named plaintiffs and the opt-in plaintiffs perform similar job duties within each subclass. The mechanics service trucks at Defendants shop; the maintenance workers also work at the Defendants shop repairing and maintaining parts of the harvest vehicles; truck drivers drive the fields owned by Defendants' clients and make trips back and forth between the fields and the dairy farms, and the weighers are responsible for weighing and recording the weight of harvested corn and wheat provided to the dairy farms. *See* example declarations Hernandez Decl. ¶ 2, Ambriz Decl. ¶ 2, Gomez-Moreno Decl. ¶ 3, and Cuevas Decl. ¶ 2. Moreover, tellingly, Defendants do not claim that the Plaintiffs do dissimilar work or in a

different manner as other employees in each individual subclass. Instead, as Defendants admitted at the hearing, they do not dispute that the employees in each subclass have similar job duties.

Second, Plaintiffs have shown that the putative class members were the victims of a single decision, policy, or plan. This requirement is met upon a showing that Plaintiffs were subject to the same uniform classification of exempt status under FLSA. *See, e.g., Kress*, 263 F.R.D. at 629. Here, Defendants do not dispute that this policy uniformly categorizes all putative class members as exempt from the overtime pay requirements of FLSA. The policy exempts all employees from overtime pay requirements.

Accordingly, the employees are similarly situated. The employees' declarations across all job descriptions provide a colorable basis for the Court to conclude that (1) the mechanics, maintenance workers, truck drivers, and weighers are similarly situated because of the uniformity of their job duties, and (2) Defendants' common pay policy inflicts a common injury on the putative class. Therefore, the Court finds that Plaintiffs adequately demonstrate that the members of the class are similarly situated.

Nonetheless, the Court acknowledges that defendant argues there are differences between the putative mechanics subclass as noted by Defendants. (Doc. 22 at 15) ("the Mechanics class is full of individuals that worked different shifts"). However, the difference in shifts identified by Defendants is not significant enough to thwart Plaintiffs' demonstration of job similarity. Defendants do not explain how working different shifts fundamentally changes the mechanics' job duties. (Doc. 22 at 14). Nor do Defendants explain how working at different times varies the employees work responsibilities. Accordingly, this argument does not change the Court's conclusion, as Plaintiffs need only show that class members' positions are similar, not "identical," to the positions held by other members. *See Syed*, 2014 WL 3778246 (E.D. Cal. July 30, 2014), *report and recommendation adopted as modified*, 1:12-CV-1718 AWI MJS, 2014 WL 6685966 (E.D. Cal. Nov. 26, 2014)(*citing Khadera v. ABM Industries Inc.*, C08-0417 RSM, 2011 U.S. Dist. LEXIS 152138, 2011 WL 7064235, at *3 (W.D. Wash. Dec. 1, 2011) ("If one zooms in close enough on anything, differences will abound . . . Plaintiffs' claims need to be considered at a higher level of abstraction."). Thus, the Court concludes that notwithstanding some minor

differences between putative class members' work schedules, Plaintiffs' evidence and substantial allegations of similarity suffice to establish that putative class members are similarly situated. *Morton*, 2007 U.S. Dist. LEXIS 31755, 2007 WL 1113999, at *2 (holding courts require little more than substantial allegations, supported by declarations or discovery at the notice-stage).

### 2. Consideration of the Agricultural Exemption is Inappropriate at this Stage

With the exception detailed above, Defendants do not disagree that members of the proposed subclasses are similarly situated. Instead, Defendants argue that the Court should deny certification because the putative class members are (1) subject to the FLSA's agricultural exemption and therefore Plaintiffs have (2) failed to identify a company-wide policy that is actually illegal and (3) conditional certification based solely on misclassification is inadequate to justify collective treatment. As expressed in greater detail at the hearing, Defendants insist that Plaintiffs' own evidence demonstrates that the duties performed by the putative class members qualify as exempt from overtime wages under the agricultural exemption to the FLSA under 29 U.S.C. § 213(b)(12). *See* 29 C.F.R. 780.158(c). Plaintiffs' own evidence shows Plaintiff did agricultural work.

The FLSA exempts "any employee employed in agriculture" from its overtime provisions. 29 U.S.C. § 213(b)(12). The FLSA defines agriculture, in relevant part, as "farming in all its branches," including, "the cultivation and tillage of the soil," "the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities," and any practices "performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." *Id*. at § 203(f). As a result, Defendants argue that Plaintiffs have not satisfied the requirements for conditional certification of a FLSA collective action because they cannot make a showing that Defendants' policy of classifying their "agricultural workers" as exempt from the federal minimum and overtime wage requirements is unlawful.

Defendants' argument, however, does not raise a sufficient ground to deny Plaintiffs' motion for conditional certification. This argument is a factual inquiry directed at the merits of the action, which Defendants are free to raise at a later stage. *See Adams v. Inter-Con Sec. Sys.,*

*Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (declining to evaluate the merits of claims at the conditional certification stage); *Leuthold v. Destination Am.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (noting that it is at the second step of the analysis that the court considers the various defenses available to the defendants with respect to the individual plaintiffs); *see also Labrie v. UPS Supply Chain Solutions, Inc.*, No. C09-3182 PJH, 2009 WL 723599, at *6 (N.D. Cal. Mar. 18, 2009) ("The court finds that SCS's arguments raise issues primarily going to the merits and are more appropriately addressed on a motion to decertify or motion for summary judgment once notice has been given, the deadline to opt-in has passed, and discovery is closed.").

Courts in the Ninth Circuit and around the country routinely hold that FLSA exemptions should be addressed at the second tier stage of a conditional certification proceeding. *See Sliger v. Prospect Mortg.*, LLC, CIV. S-11-465 LKK, 2011 WL 3747947, at *3 (E.D. Cal. Aug. 24, 2011) (granting Plaintiffs' motion to conditionally certify the class and holding that evidence that plaintiffs are exempt employees was "beside the point at this [notice]-stage of the proceeding. Defendant will have an opportunity to demonstrate the merits of its affirmative defenses at the second tier stage of this proceeding."); *Syed v. M-I, L.L.C.*, 1:12-CV-01718 AWI, 2014 WL 3778246 (E.D. Cal. July 30, 2014), *report and recommendation adopted as modified*, 1:12-CV-1718 AWI MJS, 2014 WL 6685966 (E.D. Cal. Nov. 26, 2014) (declining to address Defendants' FLSA administrative exemption argument at the tier-one notice stage); *Barrera v. U.S. Airways Group, Inc.*, CV–2012–02278–PHX, 2013 U.S. Dist. LEXIS 124624, 2013 WL 4654567, at *5 (D. Ariz. Aug. 30, 2013) (collecting cases and holding that "the potential applicability of an FLSA exemption does not preclude conditional certification."); *Stanfield v. First NLC Financial Servs., LLC*, No. C–06–3892–SBA, 2006 U.S. Dist. LEXIS 98267, 2006 WL 3190527, at *4 (N.D. Cal. Nov. 1, 2006) (rejecting defendant's argument that "the presence of several exemptions that may apply to the putative class members [ ] precludes class certification" because such a question went to the merits, and noting that "[e]ven if it turns out that [p]laintiffs cannot prevail on their FLSA claim because they are subject to exemptions, a collective action should still be certified if they are similarly situated.").

Resolving the agricultural exemption is a fact inquiry better left to the second tier of

conditional certification. Ultimately, resolving the question of whether Plaintiffs have put forth sufficient evidence that they and potential opt-in plaintiffs are similarly situated does not require a determination of the merits of the agricultural exemption. Determining this fact-specific inquiry, as Defendants request, would go against the weight of authority that prohibits undertaking that analysis at the first stage of the certification process.

Finally, to the extent that Defendants argue that the alleged misclassification is insufficient on its own to justify collective treatment, that argument is inapplicable here. (Doc. 22 at 15) (*citing Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666, 2008 U.S. Dist. LEXIS 33016, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) ("[M]erely alleging that a class of employees was wrongly designated 'exempt' does not constitute a showing of an unlawful, institution-wide policy."). As noted above, conditional class certification is justified here not on the basis of misclassification standing alone, but rather because Plaintiffs performed the same basic tasks and were subject to the same pay practices. *Cf. Brown v. Barnes & Noble, Inc.* 252 F.Supp.3d 255, 263 (S.D.N.Y 2017)("declining to certify a group of individuals with different jobs and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages."). Such a showing is sufficient for conditional certification.

Plaintiffs have made the modest showing necessary for conditional certification. Later, if discovery reveals that Plaintiffs are subject to an exemption, Defendants will have the opportunity to file a motion to decertify the collective.

### 3. Proposed Notice to Potential Class Members

Courts have the authority to supervise the issuance of a notice in FLSA collective actions, with the objective of "manag[ing] the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *See Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Plaintiffs have requested that the Court exercise this authority to (1) require the Defendants to provide a neutral class action administrator, the CPT Group, with the names and last known addresses of all members of the subclasses, their dates of employment, and positions held, and (2) direct the issuance of Proposed Notice and Consent Form to all potential class

members by mail, and or text message. (Docs. 21-2 and 21-3).

Defendants did not address these requests or raise any objection to them in its opposition. After reviewing Plaintiffs' proposed notice and consent to join, the Court is satisfied that they constitute a fair and impartial explanation of the case along with the options available to class members. Accordingly, the Court approves Plaintiffs' proposed notice and consent to join as attached as Exhibit 1 to Plaintiffs' Motion. Plaintiffs shall disseminate the notice and consent form to potential class members upon adoption of this Findings and Recommendation by the District Judge.

## V. CONCLUSION and RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS Plaintiffs' motion for conditional FLSA collective action certification be GRANTED. The Court recommends that the following four subclasses be conditionally CERTIFIED:

(1) All persons who were employed by defendants as mechanics at any time from March 10, 2014 through the present.

(2) All persons who were employed by defendants as maintenance workers at any time from March 10, 2014 through the present.

(3) All persons who were employed by defendants as truck drivers at any time from March 10, 2014 through April 4, 2016.

(4) All persons who were employed by defendants as weighers at any time from March 10, 2014 through the present.

Further, the Court recommends that the notice shall be provided to the subclass members as follows:

Within 15 days of the adoption of this Findings and Recommendations by the District Judge, the parties shall send an email to CPT Group Class Action Administrators ("CPT Group"), in Excel format, with the names and last known addresses of all members of the subclasses, their dates of employment, and position(s) held.

Within 15 days of adoption of this Findings and Recommendations by the District Judge, plaintiffs shall send an email to CPT Group with the names of the employees who have already opted into the lawsuit.

Within 15 days from receipt of the class contact information or the opt-in list (whichever

is later), CPT Group shall mail the following items to the subclass members who have not opted into the lawsuit: a copy of the Court-approved notice, the Consent to Join Lawsuit form, and an envelope addressed to Plaintiffs' counsel.

Subclass members shall have 60 days from the date of mailing to submit a signed Consent to Join Lawsuit form by mail, text message, email, or fax to plaintiffs' counsel.

45 days after the first mailing, CPT Group shall mail a second copy of the Court-approved notice and the Consent to Join Lawsuit form as a reminder to subclasses members who have not opted into the lawsuit.

In the event that mail is returned as undeliverable, CPT Group shall notify both parties within 3 days, and then, within 5 days, Defendants shall email the last known phone number to CPT Group. Within 2 days, CPT Group shall notify the subclass member by text message in English and Spanish that "There is a lawsuit against Dias & Fragoso, Inc. and D & F Agricultural Enterprises for unpaid overtime pay. Contact CPT Group at [phone number] for a copy of the notice."

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 9, 2018**          /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE